UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS - COURT ORDER

Before the Court are three motions filed by plaintiff Jamie Rooker ("Plaintiff" or "Rooker"): (1) a Motion for Final Approval of Class Action Settlement (Docket No. 36), (2) a Motion for Attorneys' Fees and Costs (Docket No. 37), and (3) a Motion for Class Representative Payment (Docket No. 38) (collectively "Motions"). Defendants General Mills Operations, LLC and General Mills, Inc. (collectively "General Mills") do not oppose these Motions. A Fairness Hearing was held on December 11, 2017, at 1:30 p.m. (Docket No. 43). The Court set a further hearing for March 21, 2018. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without further oral argument. The hearing calendared for March 21, 2018, is vacated, and the matter taken off calendar.

**I.  FACTUAL & PROCEDURAL BACKGROUND**

On November 7, 2016, Plaintiff brought this action against General Mills[1] asserting that it had a policy, practice, and/or procedure of requiring Plaintiff and similarly situated hourly employees to don uniforms and personal protective equipment before clocking in and doff them after clocking out. (Docket No. 1, Ex. 1 ("Compl.") ¶¶ 1, 34, 42.) General Mills removed the action to this Court on January 19, 2017, alleging that this Court has jurisdiction based on the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). (Docket No. 1.) The operative First Amended Complaint alleges claims for (1) failure to pay wages for all time worked, Cal. Lab. Code §§ 1194 and 1997; (2) failure to pay all wages for all overtime worked, Cal. Lab. Code §§ 510, 1194, and 1198; (3) failure to provide meal periods and/or meal period premium wages, Cal. Lab. Code §§ 512 and 226.7; (4) failure to provide complete and accurate wage statements, Cal. Lab. Code § 226; (5) failure to timely pay final wages, Cal. Lab. Code §§ 201 and 202; (6) unfair business practices, Cal. Bus. & Prof. Code §§ 17200, et seq.; and (7) California's Private Attorneys General Act, Cal. Lab. Code §§ 2698, et seq. (See Docket No. 30, Declaration of Andrea Rosenkranz, Ex. 4; see also Docket No. 34, Order Granting Motion for Preliminary Approval of Settlement ("Prelim. Approval Order") 11.)

---

[1]  Yoplait USA, Inc. was originally named as a defendant in this action, but was voluntarily dismissed with prejudice by stipulation on February 19, 2018. (See Docket Nos. 45, 46.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

On June 19, 2017, Plaintiff filed an unopposed motion for preliminary approval of class action settlement. (Docket No. 30.) The Court preliminarily approved the Original Settlement Agreement and preliminarily certified the Settlement Class. (See Prelim. Approval Order.) In doing so, the Court preliminarily approved the appointment of Rooker as Class Representative, Joseph Lavi of Lavi & Ebrahimian, LLP as Class Counsel, and ILYM Group, Inc. ("Settlement Administrator" or "ILYM"). (See id. at 7; Settlement Agreement ¶ 59.)

Plaintiff now moves for final approval of the Settlement Agreement.[2] (See Notice of Final Approval Mot.) In addition, she seeks certification for settlement purposes of the Settlement Class; appointment of Rooker as Class Representative; appointment of Joseph Lavi of Lavi & Ebrahimian, LLP as Class Counsel; approval of an incentive award to Plaintiff; approval of attorneys' fees and costs; approval of settlement administration costs; approval of the California Labor & Workforce Development Agency ("LWDA") payment; and final judgment based upon the Settlement Agreement. (See id. at 2.)

The Settlement Agreement defines Class Members as:

> all individuals who are or previously were employed by Defendants, [defined as General Mills Operations, LLC and General Mills, Inc.], or any of them, at the Carson facility as non-exempt employees at any time from November 7, 2012 through [August 14, 2017].

(Settlement Agreement ¶ 7; Docket No. 44, Joint Stipulation re Final Approval ("Joint Stip.") 3 (confirming August 14, 2017, as end date for class period).) Plaintiff seeks certification, for purposes of settlement only, of the Settlement Class, which consists of all Class Members who have not timely and validly filed an opt-out request. (See Settlement Agreement ¶ 38.)

Pursuant to the Settlement Agreement, the Gross Settlement Amount is $390,000. From the Gross Settlement Amount, Plaintiff requests (1) an attorneys' fee award of 25%, or $97,500.00; (2) litigation costs of $7,203.23; (3) claims administration expenses of $14,658.99; and (4) an incentive award of $3,900.00 to Rooker. Plaintiff further seeks a LWDA payment for the total sum of $5,000.00, 75% (i.e., $3,750.00) of which will be paid directly to the LWDA and 25% (i.e., $1,250.00) of which will be distributed to the Class Members who have made claims ("Participating Class Members"). The

---

[2] Since the filing of this Motion, the parties stipulated to amend the original settlement agreement by modifying the definition of pay periods worked. (See Docket No. 39.) The Court granted the Stipulation and found that the amendment did not require supplemental class notice. (See Docket No. 40.) Defendants then lodged the amended Settlement Agreement and a supplemental declaration of the Settlement Administrator. (See Docket No. 41, Ex. A ("Settlement Agreement"); Docket No. 41-1, Supplemental Declaration of Nicole Bench re Joint Stipulation ("Bench. Decl. II").) "Settlement Agreement" will refer to the amended settlement agreement, unless otherwise specified.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

remainder of the Gross Settlement Amount, i.e., the Net Settlement Amount – $262,987.78[3/] if all of the above expenses are approved – would be available for Class Members' claims. (See Bench Decl. II ¶ 7.) Pursuant to the Settlement Agreement, this is a claims-made reversionary fund with a 65% floor; this requires a minimum of 65% of the Net Settlement Amount be distributed to Participating Class Members. (See Settlement Agreement ¶¶ 63, 72.) Pursuant to the Agreement, Settlement Class Members agree to release General Mills and affiliated entities from any and all claims, whether known or unknown, asserted in this action or that could have been asserted in this action, and that arise from the facts and matters alleged. (See id. at ¶¶ 34, 37, 42.)

Following preliminary approval of the Settlement Agreement, Class Members were notified of the Settlement Agreement and its terms. The agreed-upon settlement administrator, ILYM, mailed notices, in English and Spanish, via U.S. First Class Mail, to all 328 Class Members on September 7, 2017. (Bench Decl. I ¶ 7.) Ten such notices were returned undeliverable. (Id. at ¶ 19.) Through skip-tracing ILYM found new addresses for eight of these Class Members, and forwarded the notices to them. (Id.) Ultimately, three notices were deemed undeliverable. (Id. at ¶ 11.) Those who wished to opt out, object, or make claims were required to submit an opt-out notice, objection, or claims form no later than November 6, 2017. (Id. at ¶¶ 13, 16.)

Of 328 Class Members, 231 have made claims, three have opted out, and none have filed objections to the Settlement Agreement. (Id. at ¶¶ 14, 16; see Joint Stip., Ex. A, Supplemental Declaration of Nicole Bench re Joint Stipulation ("Bench Decl. III") ¶ 3.) One claim was filed late, but has been approved by both parties. (Bench Decl. III ¶ 3.) Four disputes were received by ILYM and forwarded to defense counsel. (Bench Decl. I ¶ 15.) The amendment to the Settlement Agreement resolved all disputes received. (Bench Decl. III ¶ 4.)

The parties have agreed that Participating Class Members would be paid the higher of (1) the amount estimated on the claimant's claim form, (2) the amount calculated based on the revised Pay Periods Worked in the Settlement Agreement, and (3) the amount calculated based on the revised Pay Periods Worked in the Settlement Agreement at $4.86 per pay periods worked, rather than $4.84 per pay periods worked.[4/] (Joint Stip. 4–5.) Class Members have made approximately $211,648.99 worth of

---

[3/] The Settlement Administrator's Declaration contains a different approximate net settlement amount, based on estimated litigation costs of $8,000. (Declaration of Nicole Bench ISO Motion for Final Approval ("Bench Decl. I") ¶ 16.) Plaintiff seeks actual litigation costs of $7,203.23. (Declaration of Joseph Lavi ISO Motion for Final Approval ("Lavi Decl. I") ¶ 22.)

Plaintiff has attached a Declaration of Joseph Lavi to each of her Motions, but each such declaration is identical. Accordingly, the Court refers to these declarations interchangeably.

[4/] The Settlement Administrator had originally calculated Class Member awards for this Motion
(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

claims. (See Bench Decl. III ¶ 13.) The average payment to a Class Member would be $915.72, while the estimated maximum award would be $1,214.18. (Id. at ¶ 12.) Pursuant to the Settlement Agreement, any settlement checks remaining uncashed after one hundred and eighty (180) calendar days after being issued would be void and the amount would escheat to the Department of Labor Standards Enforcement's unpaid or unclaimed wage fund. (Settlement Agreement ¶¶ 69–70.)

## II. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Class Certification

Final approval of a class action settlement first requires that the Court decide whether to certify the settlement class or classes pursuant to Rule 23. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019–20 (9th Cir. 1998). Here, the Court preliminarily approved the Settlement Class for certification. Because no material change has occurred that would alter the Court's analysis of whether to certify the Settlement Class, the Court incorporates its class certification analysis as set forth in the order granting preliminary approval.[5] (See Prelim. Approval Order 3–6.) The Court adopts its prior findings, and certifies the Settlement Class for purposes of settlement only.

### B. Appointment of Class Counsel, Class Representative, and Settlement Administrator

#### 1. Class Counsel

Pursuant to Rule 23(g)(1), upon class certification, the Court must appoint class counsel. Fed. R. Civ. P. 23(g)(1). In doing so, the Court must consider (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the

---

[4]/(...continued) based upon a class period end date of August 10, 2017 – the date the Preliminary Approval Order was issued. (Bench Decl. III ¶ 6.) Under that calculation, each claimant would receive $4.86 per workweek. (Id. at ¶ 8.) However, in light of the Settlement Agreement's language that the class period would end on the date the Preliminary Approval Order was entered, rather than the date on which it was issued (see Settlement Agreement ¶ 7), the appropriate class period end date was August 14, 2017. Based on this date, the Settlement Administrator recalculated the amount each claimant would be awarded, and determined that amount to be $4.84 per workweek worked instead. (Bench Decl. III ¶ 8.) However, the parties have stipulated that the claimants shall be paid the higher of these amounts or the amount in the individual's claim form. (Joint Stip. 4–5.)

[5]/ The Court resolves previous concerns about the requested attorneys' fees and incentive award in favor of approving the Settlement Agreement. (See Prelim. Approval Order 9–10; see also infra Parts III.A & IV.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A); Radcliffe v. Hernandez, 818 F.3d 537, 547 (9th Cir. 2016). "Class counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Here, Joseph Lavi of Lavi & Ebrahimian, LLP is qualified and competent, and has extensive class action litigation experience. (See Lavi Decl. I ¶ 3.) Furthermore, he has adequately investigated the claims of the Class, has committed resources to represent the Class, and has obtained a fair and adequate settlement for the Class. (See id. at ¶¶ 4–7; Prelim. Approval Order; see also infra Part III.A.) No objection has been made to his appointment. Accordingly, the Court appoints Joseph Lavi as Class Counsel.

      2.      Class Representative

Rule 23(a) requires that representative parties be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a)(4). Representation is adequate if (1) "the named plaintiffs and their counsel [do not] have any conflicts of interest with other class members," and (2) "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class . . . ." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011).

There are no apparent conflicts of interest between Plaintiff and the other Class Members. While Plaintiff seeks an incentive award of $3,900, this does not inherently create a conflict of interest. (See infra Part IV.) Here, Plaintiff sought out counsel and has contributed time and energy to pursue this action. (See Lavi Decl. I, Ex. 6, Declaration of Jamie Rooker ISO Motion for Final Approval ("Rooker Decl.") ¶¶ 7–9; see also infra Part IV.) As discussed in the preliminary approval order, Plaintiff's claims are reasonably co-extensive with those of the unnamed Class Members, and there are no unique defenses that apply to Plaintiff only. (See Prelim. Approval Order, 5.) In addition, no Class Member has opposed Rooker's appointment. Therefore, the Court finds Plaintiff to be an adequate representative of the Class, and appoints her Class Representative.

      3.      Settlement Administrator

Finally, the parties agreed upon and proposed ILYM as Settlement Administrator. (See Settlement Agreement ¶ 59(e).) Based on the parties' agreement and ILYM's experience, the Court appoints ILYM to serve as Settlement Administrator. (See id.; Bench Decl. I ¶ 2.)

    **C.**    **Fairness of the Class Settlement**

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). To make this determination, courts consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See id. A court must further consider whether the settlement may be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). For the following reasons, the Court finds that the Settlement Agreement is fundamentally fair, adequate, and reasonable.

      1.      The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

"When evaluating the strength of a case, the Court should evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." De Santos v. Jaco Oil Co., No. 1:14-cv-0738-JLT, 2015 U.S. Dist. LEXIS 93410, at *16 (E.D. Cal. July 17, 2015). While Plaintiff contends her case is strong, she acknowledges the risks in the absence of settlement. In particular, Plaintiff acknowledges that Class Members could have received less or nothing if General Mills prevailed on its argument that it (1) had paid Class Members for time spent donning and doffing uniforms and protective equipment, or that such time was de minimis; (2) had provided proper meal periods; and/or (3) had not committed any violation willfully or intentionally. (See Final Approval Mot. 12–13.) Furthermore, more extensive discovery could reveal that the Class Members' claims are too individual to meet the commonality requirement. (See id.) Finally, continued litigation would delay payment to the Class Members and increase the amount of attorneys' fees. These factors weigh in favor of settlement approval.

      2.      The Amount Offered in the Settlement Agreement

The Gross Settlement Amount is $390,000. According to Class Counsel, this is approximately 33% of the maximum potential recovery in this case, exclusive of penalties. (Lavi Decl. I ¶ 7.) Class members were required to make a claim to receive an award. (Settlement Agreement ¶ 72.) As a result of the number of claims made, and stipulations of the parties, approximately $211,648.99 would be distributed to Participating Class Members. (See Bench Decl. III ¶¶ 12–13.) This constitutes approximately 80.48% of the Net Settlement Amount. The average gross award to each Participating Class Member of approximately $915.72, while the maximum award is $1,214.18. (Id.)

The amount offered in settlement is reasonable. Importantly, Class Members had the opportunity to opt out or object if dissatisfied with the settlement amount. They were also notified of their approximate individualized claim amount in the Notice. Given the increased expense and risk that would accompany continued litigation, the weaknesses of Plaintiff's claims, and the presence of the opt-out provision, the Gross Settlement Amount and proposed distribution of funds are reasonable and favor of approval of the Settlement Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

        3.       <u>The Extent of Discovery Completed and the Stage of the Proceedings</u>

      This action was originally filed in November 2016. The parties have conducted formal and informal discovery and exchanged initial disclosures pursuant to Federal Rules of Civil Procedure Rule 26. (Lavi Decl. I ¶ 5.) In addition, Plaintiff obtained expert analysis of Defendants' pay records. (<u>Id.</u>) The parties also engaged in a formal mediation session before Hon. Stephen J. Sunvold (Ret.) on April 5, 2017, and continued to use his services afterward in settlement discussions. (<u>Id.</u>) These facts suggest that the parties have given adequate thought and made informed decisions in reaching the Settlement Agreement. This factor weighs in favor of approval of the Settlement Agreement.

        4.       <u>The Experience and Views of Counsel</u>

      The Court finds that Class Counsel has sufficient experience with class action litigation in the field of employment law to appropriately assess the legal and factual issues in this matter and determine whether the proposed Settlement Agreement serves the interests of the Class Members. (<u>See</u> <u>id.</u> at ¶ 3.) Class Counsel's belief that the proposed Settlement Agreement is both fair and adequate weighs in favor of approval. (<u>See</u> <u>id.</u> at ¶ 12.)

        5.       <u>Collusion Between the Parties</u>

      To determine whether there has been any collusion between the parties, courts must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self interests," thereby raising the possibility that the settlement is the result of misconduct by the negotiators or improper incentives for certain class members. <u>Staton</u>, 327 F.3d at 961. Here, it appears that the Settlement Agreement was the product of informed, arm's-length negotiations between the parties. (<u>See</u> Levi Decl. I ¶ 11; Settlement Agreement ¶ 48.) The reasonableness of the amount offered in settlement and of the attorneys' fees and incentive payment (<u>see</u> <u>infra</u> Parts III.A & IV), as well as reversion of only a fraction the Net Settlement Amount to General Mills further suggest an absence of collusion. The Court finds that this factor favors approval of the Settlement Agreement.

        6.       <u>Presence of Governmental Participant</u>

      Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants notified the U.S. Attorney General and state officials of the Settlement Agreement. (<u>See</u> Docket No. 42; <u>see also</u> <u>infra</u> Part II.E.) "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." <u>Garner v. State Farm Mut. Auto. Ins. Co.</u>, Case No. CV 08-1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *14 (N.D. Cal. Apr. 22, 2010). No government official has objected to the terms of the Settlement Agreement. Accordingly, this factor weighs in favor of final approval. <u>See</u> <u>Noll v. eBay, Inc.</u>, 309 F.R.D. 593, 608 (N.D. Cal. 2015); <u>Holman v. Experian Info. Sols., Inc.</u>, Case No. 11-cv-0180 CW (DMR), 2014 U.S. Dist. LEXIS 173698, at *8 (N.D. Cal. Dec. 12, 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

    7.  <u>Reaction of Class Members to Proposed Settlement</u>

  Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); <u>see also</u> <u>Boyd v. Bechtel Corp.</u>, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate). Class Members were provided notice of the proposed Settlement Agreement pursuant to this Court's order granting the motion for preliminary approval. According to the Settlement Administrator, 231 of the 326 Class Members filed claims, representing 70.43% of Class Members. (Bench Decl. III ¶ 3.) Three Class Members requested exclusion, and no Class Member has objected to the Settlement Agreement. (Bench Decl. I ¶¶ 13, 14.) Furthermore, only four Class Members filed disputes as to the amount of their individual claim award, and those disputes have been resolved by the Amended Settlement Agreement. The overall positive reaction of Class Members is strong evidence that the Settlement Agreement is fundamentally fair and reasonable.

  Based on the foregoing analysis, the Court finds the Settlement Agreement fundamentally fair, adequate, and reasonable.

  **D.**  **Adequacy of Notice to the Settlement Class**

  Under Federal Rule of Civil Procedure 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" <u>Klee v. Nissan N. Am., Inc.</u>, NO. CV 12–08238 AWT (PJWx), 2015 WL 4538426, at *5 (C.D. Cal. July 7, 2015). Here, the notice given to Class Members was sufficient. The parties mutually agreed upon a neutral Settlement Administrator who handled communications to and from the Class Members. (Settlement Agreement ¶ 36.) The Settlement Administrator sent individualized packets containing a Notice and Claim Form. (<u>Id.</u> at ¶ 61; Bench Decl. I, Ex. A (Notice and Claim Form).) Each Notice was individualized to inform each Class Member of his or her approximate entitlement under the Settlement Agreement based on how many pay periods he or she worked for General Mills in a non-exempt position during the class period. Based on the stipulation of the parties, Participating Class Members will receive the individualized amount stated in the Notice, at a minimum. (<u>See</u> Joint Stip. 4–5.) The Notice also informed Class Members of: (1) the material terms of the Settlement Agreement; (2) their right to object or opt-out and the procedure for doing so; (3) their right to challenge the number of pay periods the settlement administrator allocated him or her; (4) the date, time, and location of the final fairness hearing; and (5) the Court's right to reschedule the final fairness hearing without further notice. (<u>See</u> Bench Decl. I, Ex. A.) Furthermore, the Settlement Administrator mailed Class Members a reminder postcard on October 17, 2017. (Bench Decl. I ¶ 8 & Ex. B.) The Notices and the reminder postcards were written in English and Spanish.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

(Bench Decl. I ¶¶ 4, 7, 8 & Exs. A, B.) The Court concludes that the notice procedure comported with the requirements of Due Process and Federal Rule of Civil Procedure 23(e).

  **E.**  **CAFA Notice**

In order to approve a settlement in a class action, a court must assess whether the defendant has met the notice requirements of CAFA. See 28 U.S.C. § 1715(b); see also Chambers v. Whirlpool Corp., 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016). The Court may not issue "[a]n order giving final approval of a proposed settlement . . . earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the noticed . . . ." 28 U.S.C. § 1715(d).

After giving notice to state and federal officials of the original settlement agreement (see Lavi Decl. I ¶ 25), the parties filed a joint stipulation to amend the settlement agreement with this Court on December 5, 2017. (Docket No. 39.) The Court approved the stipulation, but required Defendants to renew their notice to federal and state officials. (Docket No. 40 ¶ 4.) Pursuant to 28 U.S.C. § 1715 and Court order, notice of the Settlement Agreement, as amended, was served upon the appropriate officials for review on December 7, 2017. (See Docket No. 42 (proof of service).) Thus, ninety days elapsed on March 7, 2017; neither state nor federal officials filed an objection. Accordingly CAFA's notice requirements have been satisfied.

**III.**  **ATTORNEYS' FEES, LITIGATION EXPENSES, AND ADMINISTRATION EXPENSES**

  **A.**  **Attorneys' Fees**

Plaintiff seeks an award of $97,500 in attorneys' fees. The Court is obligated to conduct a careful review of the reasonableness of the requested attorneys' fees and costs. See In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994) ("Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs."). Plaintiff seeks $97,500 in attorneys' fees. This constitutes 25% of the Gross Settlement Amount created by the Settlement Agreement. In common fund cases, "where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Hanlon, 150 F.3d at 1029. "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. The Ninth Circuit has established 25% of the common fund "as a benchmark award for attorney fees." Id. "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

"The lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate . . . .'" In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 945 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

2011) (quoting In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 820 (3d Cir. 1995)). Here, two attorneys spent 137 hours working on Plaintiff's case. (Lavi Decl. I ¶¶ 18, 20.) One is a partner who has practiced law for more than 16 years. (Id. at ¶ 3.) He has a rate of $675 per hour and has spent in excess of 52 hours on this case. (Id. at ¶ 18.) The other attorney is an associate who has practiced law since 2014. (Id. at ¶ 19.) She has a rate of $425.00 per hour and has dedicated approximately 85 hours to the case. (Id. at ¶ 20.) The lodestar calculation would be $71,225.00, which is $26,275.00 less than the attorneys' fee award requested by Plaintiff. (See id. at ¶ 21.) The fees sought equate to adding a multiplier of 1.37 to the lodestar amount. (See id.)

Considering the results achieved, the time expended, the risk of litigation, the skill required, the quality of work, the contingent nature of the fee, the financial burden carried by Class Counsel, and awards made in similar cases, as well as the lack of Class Member objection to the requested fee award, the Court finds that the requested attorneys' fee award is reasonable. The Court therefore grants Plaintiff's request for $97,500 in attorneys' fees to be awarded from the Gross Settlement Amount.

### B. Litigation Costs

Plaintiff requests $7,203.23 in litigation costs. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). However, an expense that should be considered part of the attorneys' overhead, and therefore included within an award of attorneys' fees, should not be characterized as a litigation expense and recovered as a cost item. Id. ("An award of out-of-pocket expenses should be limited to those expenses customarily billed to a fee-paying client."). Class Counsel has filed a supplemental declaration itemizing the costs sought as follows: $1,435.00 in filing fees; $3,225.00 for mediation; $1,250.00 for expert data analysis; $470.10 for service of summons and complaint; $282.25 for messenger services; $30 for Defendants' business entity records from the Secretary of State of California; $252.50 for copying, scanning, and faxing; $75 for filing a PAGA complaint with the Department of Industrial Relations; $122.60 for FedEx and mail; and $60.78 for parking and mileage. (Joint Stip., Supplemental Declaration of Joseph Lavi ISO Mot. ("Lavi Decl. II") ¶ 3.) The Settlement Class was notified that litigation costs of up to $8,000 could be awarded to Class Counsel, and no Class Member objected. The Court concludes that the requested costs are reasonable, and awards Class Counsel $7,203.23 from the Gross Settlement Amount for litigation costs.

### C. Administration Award

Finally, Plaintiff seeks final approval of administration costs of $14,658.99. A Case Manager for ILYM has provided a declaration in which she identifies the services ILYM has provided in this case. (Bench Decl. I ¶ 3.) She further attests that ILYM will incur a total of $14,658.99 in costs performing its duties in this case, including costs already incurred and those that will be incurred through completion. (Bench Decl. III ¶ 14.) The Court finds these administration costs reasonable and awards ILYM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

$14,658.99 from the Gross Settlement Amount to cover all administration costs through completion of the settlement distribution.

### IV.     PLAINTIFF'S INCENTIVE AWARD

Plaintiff has filed a motion for an incentive award of $3,900. Class representatives are eligible for reasonable incentive payments. See Staton, 327 F.3d at 977; Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). However, the district court must evaluate such awards individually to detect "excessive payments to named class members" that may indicate that "the agreement was reached through fraud or collusion." Id. at 975; Radcliffe v. Experian Info. Sols., Inc., 715 F.3d 1157, 1164 (9th Cir. 2013) ("We once again reiterate that district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."). Courts may consider the following criteria in determining whether to make an incentive award: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit enjoyed by the class representative as a result of the litigation. Van Vraken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995). To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Staton, 327 F.3d at 975.

An award of $3,900 constitutes one percent of the Gross Settlement Amount and is approximately 4.26 times larger than the average award that Participating Class Members will receive, and 3.21 times larger than the estimated maximum award that a Participating Class Member will receive. Here, Plaintiff has been involved in the litigation of this dispute and settlement negotiations since seeking legal counsel more than one year ago. (Rooker Decl. ¶ 7.) Plaintiff attests that she has spent more than 30 hours on this case. (Id. at ¶ 9.) During this time, Plaintiff has discussed Defendants' policies, procedures, and practices for calculating hours worked with Class Counsel; gathered and produced documents; responded to Class Counsel's communications; attended mediation; and discussed the Settlement Agreement with Counsel. (See id. at ¶ 7.) Some of these tasks required Plaintiff to travel from Torrance, California to Los Angeles and Beverly Hills. (See id.) Plaintiff believes that serving as a named plaintiff against her former employer could cause her to face repercussions from future employers. (See id. at ¶ 8.) In addition, Plaintiff faced a risk of liability for litigation costs if the suit were unsuccessful. (See id.)

Based on these facts, the Court finds an incentive award of $3,900 reasonable.

### CONCLUSION

For the foregoing reasons, the Court finds that the Settlement Agreement is fundamentally fair, adequate, and reasonable. The Court therefore grants Plaintiff's Motion for Final Approval of Settlement. The Court certifies the Settlement Class, as described above. Excluded from the Settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-467 PA (PLAx) | Date | March 26, 2018 |
|---|---|---|---|
| Title | Jamie Rooker v. General Mills Operations, LLC, et al. | | |

Class is any individual who timely opted out of the Settlement Agreement. Members of the Settlement Class are bound by the Settlement Agreement unless they submitted timely and valid written requests to be excluded from the Settlement Agreement. Members of the Settlement Class who did not timely exclude themselves from the settlement have released those claims against General Mills as set forth in the Settlement Agreement.

The Court appoints Jamie Rooker as Class Representative, Joseph Lavi of Lavi & Ebrahimian, LLP as Class Counsel, and ILYM as Settlement Administrator.

The Court further grants Plaintiff's Motion for Award of Attorneys' Fees and awards $97,500 in fees and $7,203.23 in costs to Class Counsel to be paid from the Gross Settlement Amount. The Court approves $14,658.99 for administration costs to be paid to ILYM from the Gross Settlement Amount. Additionally, the Court grants Plaintiff's Motion for an Incentive Award in the amount of $3,900 to be paid from the Gross Settlement Amount.

IT IS SO ORDERED.